IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| **SHAUNDRE LASKEY**, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) Case No. 6:22-cv-03194-MDH |
| | ) |
| **BLUEGREEN VACATIONS UNLIMITED**, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## ORDER

Before the Court is Plaintiff's Motion for Partial Summary Judgment (Doc. 98) and Defendants' Motion for Summary Judgment (Doc. 101). The motions are fully briefed and ripe for review. For the reasons set forth herein, Defendants' Motion is granted and Plaintiffs' Motion is denied.

## BACKGROUND

Plaintiffs originally filed this action on September 18, 2018, in Missouri state court. Plaintiffs filed a Motion for Class Certification which has been fully briefed and is also pending. Plaintiffs' Motion for Partial Summary Judgment addresses Class Counts I, II, and III of Plaintiffs' Third Amended Petition, alleging violations of RSMo. § 484.010 *et seq.*, unauthorized practice of law, violations of RSMo. §407.010 *et seq.*, Missouri Merchandising Practices Act (hereinafter "MMPA"), and money had and received. Plaintiffs allege under Missouri law, Defendants Bluegreen Vacations Unlimited, Inc. ("BVU") and Resort Title Agency, Inc. ("RTA") charged fees for preparing legal documents and therefore engaged in the unauthorized practice of law. Further, Plaintiffs allege the unauthorized practice of law necessarily triggers consumer protection

1

under the MMPA and gives rise to common law claims of money had and received. Plaintiffs move for summary judgment on these class claims.

Defendants also move for summary judgment on Plaintiffs' class claims arguing that they did not charge fees for the preparation of legal documents and that Plaintiffs have failed to submit evidence of any such fee. As a result, Defendants contend Plaintiffs' class claims fail and judgment should be entered in favor of Defendants.

In addition, Defendants move for summary judgment on Plaintiffs' individual claims. Defendants argue any such claims are foreclosed by the contracts that Plaintiffs executed and Plaintiffs have failed to submit evidence in support of their individual claims.

**FACTS**

Plaintiffs' lawsuit arises out of Bluegreen Vacations Unlimited's marketing and selling of timeshare interests. Plaintiffs claim BVU sells "vacation points" that can be used as currency to stay at resorts within the Bluegreen Vacation Club ("Club") network. Defendants contend they do not sell vacation points, but instead sell vacation ownership interests ("VOIs").

When BVU sells a Club interest, the purchaser does not receive legal title or a deed to an identified unit within the Club network. Instead, BVU deeds a "unit week" to Vacation Trust, Inc. ("VTI") pursuant to its trust agreement and awards the purchaser vacation points based on the unit week's assigned value. Defendants do not deny that the purchaser does not receive legal title or a deed. Defendants contend Plaintiffs executed an Owner Beneficiary Agreement ("OBA") and in doing so purchased a real property interest—specifically, a timeshare estate— in Unit 2503H/28O at Paradise Point Resort, 250 Lakewood Drive, Hollister MO 65672. Plaintiffs were also allocated 7,000 biennial vacation points. The parties disagree on the description of the "timeshare interest"

but it is undisputed Plaintiffs did not receive a deed or any legal title to the described Unit. Instead, Plaintiffs became beneficiaries of the Trust and the property was deeded to the Trust.

The property, or "underlying inventory or the timeshare interest," is titled and owned by VTI as a trustee. The Unit cited by Defendants is held in the trust and Plaintiffs, as purchasers or "owners," are given certain beneficiary rights pursuant to the trust. The beneficiaries were given vacation points to use at Bluegreen properties.

As part of the transaction with a purchaser, BVU has an arrangement with RTA in which the VOI purchaser pays $350 to RTA for coordination of the VOI closing, title, and escrow services. BVU presents the VOI purchaser with an Affiliated Business Arrangement Disclosure Statement that states: "you are NOT required to use Resort Title Agency, Inc. as a condition for settlement of your loan or purchase or sale of the subject property."

It is the $350 fee that is the subject of Plaintiffs' class claims. Plaintiffs contend the fee represents money paid for the preparation of legal documents and therefore supports their claims for unauthorized practice of law, consumer protection under the MMPA, and common law claims of money had and received. Defendants dispute that the fee relates to documentation preparation or the practice of law.

Defendant RTA, who the $350 fee is paid to, is a wholly owned subsidiary of Bluegreen Corporation and provides closing services for BVU. RTA does not provide title, escrow, or closing services to the general public. RTA's title searches involve internal review of BVU's timeshare inventory. Defendants state RTA title searches are not limited to internal reviews and covers reviews of chain-of-title involving inventory obtained from third-party properties. However, the record does not reflect any evidence of third party properties that it would have reviewed.

After a purchaser completes an OBA the Defendants' computer application automatically assigns available inventory to individual purchase agreements. BVU staff does not know which piece of timeshare inventory will be assigned to an agreement prior to printing. The documents utilized in connection with the sales are standardized and information for each sale is filled into the documents based on the information gathered. The various documents used to effect the sale of VOIs and associated financing, and policies and agreements governing rights and obligations under those documents are standardized. The information gathered in each sale is included in a form or document, including information particular to the purchaser (such as personal identifying information), the property being purchased, and the applicable price, costs, and fees.

BVU staff in the sales centers input the particularized customer and transaction information that is used to complete various contract documents. RTA then uses that information to facilitate the execution and recording of deeds by Bluegreen/Big Cedar Vacations, LLC and Vacation Trust, Inc. based on the information.

**Individual claims**

On March 29, 2014, the Laskeys visited the Bluegreen Wilderness Club at Big Cedar Lodge resort near Branson, Missouri and attended a group presentation. Ms. Laskey testified that, during the group presentation, she was told the timeshare would be a great investment, that the price of hotels in the future would be very expensive, you could basically go anywhere in the world, you could reserve that spot at any time you wanted to, and you wouldn't have to worry about that expense. Ms. Laskey also testified that she was told the timeshare would be a great investment because it could be passed down to their children. Mr. Laskey also testified that he was told it would be a great investment, and that he could pass it down to his children. Ms. Laskey states after the group presentation, the Laskeys had an individual meeting where she was told "we

4

would be able to pass this on to our kids, and their kids, and it would be a great investment for our family."

On March 29, 2014, the Laskeys initially received and executed a Purchase Proposal, filled in by hand, which disclosed an itemized list of "PURCHASE TERMS," which included a $350 "Closing Cost." That same day, the Laskeys executed an Affiliated Business Arrangement Disclosure Statement, which explains that unless the purchasers preferred to use another provider, RTA would provide "settlement services" and would charge $350 for those services. The Laskeys also received a Settlement Statement (HUD-1), which identified the $350 "Settlement or closing fee" as falling under the category of "Title Charges." A Final Settlement Statement (HUD-1) was prepared following the closing on the Laskeys' property, which further broke down the total settlement fee into its component parts: $290 for "Title Services and Lender's Title Insurance," consisting of $280 as a "Settlement or Closing Fee to RESORTS TITLE AGENCY, INC.," and $10 for "Lender's Title Insurance"; and $60 for "Government Recording Charges," consisting of $27 for recording the deed, and $33 for recording the mortgage.

In addition, on March 29, 2014, the Laskeys executed an Owner Beneficiary Agreement. The Owner Beneficiary Agreement itemized "Closing Costs (Settlement Fees)" of "$350." The agreement provided that RTA would issue the lender's title insurance policy.

The OBA included the following provision:

> **NO PURCHASER SHOULD RELY UPON REPRESENTATIONS OTHER THAN THOSE INCLUDED IN THIS AGREEMENT AND IN THE DOCUMENTS REFERRED TO HEREIN**.

It also included the following terms and conditions:

> **NO ORAL OR WRITTEN REPRESENTATIONS, WARRANTIES**. The parties agree that this Agreement, along with the documents referred to herein, are the only agreements and disclosures between them. Purchaser should not rely upon any representations, oral or written, which are not herein set forth. This Agreement

5

will become effective and binding upon the parties hereto when signed by Purchaser in the space provided herein and received and accepted by [Bluegreen]. Except as otherwise provided by law, [Bluegreen] makes no warranties, express or implied, whatsoever regarding the Property, Units, Common Elements or Common Furnishings including but not limited to warranties of merchantability or fit-ness for a particular purpose. The Multi-Site Public Offering Statement, which should be reviewed by each Purchaser, provides additional specificity and explanations regarding the information set out herein and shall provide guidance in the interpretation of any provisions hereof.

On March 29, 2014, the Laskeys were read an Owner Confirmation Interview ("OCI"). The Laskeys executed a written copy of the OCI and initialed after each numbered paragraph. In Paragraph 12, the Laskeys were asked if any "promises or commitments" "were important to [their] decision to purchase that have not been covered in writing," and they identified "None."

## STANDARD OF REVIEW

Summary judgment is proper if, viewing the record in the light most favorable to the non-moving party, there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp., v. Catrett,* 477 U.S. 317, 322-23 (1986). The moving party is entitled to summary judgment as a matter of law if they can establish there is "no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986). Once the moving party has established a properly supported motion for summary judgment, the non-moving party cannot rest on allegations or denials but must set forth specific facts showing that there is a genuine issue for trial. *Id.* at 248.

A question of material fact is not required to be resolved conclusively in favor of the party asserting its existence. Rather, all that is required is sufficient evidence supporting the factual dispute that would require a jury to resolve the differing versions of truth at trial. *Id.* at 248-249.

## DISCUSSION

**Unauthorized Practice Of Law**

6

All parties move for summary judgment on the claim of unauthorized practice of law, and claims stemming from these alleged actions. Plaintiffs claim that Defendants, individually, or collectively, engaged in the unauthorized practice of law or law business in violation of Missouri statutes. Plaintiffs allege Defendants charged consumers $350 for the conveyance of timeshare points from BVU to a trust and the preparation of documents to effectuate the same. Plaintiffs seek to recover the $350 fee, plus liquidated damages, attorney's fees, and costs for each of the putative class members. Defendants argue there is no evidence that the $350 fee (or any fee) was charged for the preparation of legal documents and as a result there is no evidence of the unauthorized practice of law.

In Missouri, the practice of law is governed by statute. Section 484.010, RSMo. defines the practice of law as:

> the appearance as an advocate in a representative capacity or the drawing of papers, pleadings or documents or the performance of any act in such capacity in connection with proceedings pending or prospective before any court of record, commissioner, referee or any body, board, committee or commission constituted by law or having authority to settle controversies.

RSMo. § 484.010.1. The Missouri Supreme Court determines what constitutes the unauthorized practice of law. *In re First Escrow, Inc.*, 840 S.W.2d 839, 842 (Mo. 1992). The legislature can assist the Supreme Court in identifying what activities qualify as the practice of law. *Strong v. Gilster Mary Lee Corp.*, 23 S.W.3d 234, 239 (Mo. App. E.D. 2000). It can establish punishments for unauthorized practice, and it has the authority to legally define the practice of law as long as those definitions align with the Supreme Court's decisions. *Id.* However, the Legislature cannot impede, disrupt, or undermine the Court's inherent authority to regulate the practice of law. *Id.* (citing *Hoffmeister v. Tod*, 349 S.W.2d 5, 11 (Mo. banc 1961); *Risbeck v. Bond*, 885 S.W.2d 749, 750 (Mo.App. S.D.1994)).

7

Section 484.020, RSMo. provides that no corporations shall "engage in the practice of the law or do law business as defined in section 484.010, or both." RSMo § 484.020.1. Section 484.010, RSMo. defines law business as:

> the advising or counseling for a valuable consideration of any person, firm, association, or corporation as to any secular law or the drawing or the procuring of or assisting in the drawing for a valuable consideration of any paper, document or instrument affecting or relating to secular rights or the doing of any act for a valuable consideration in a representative capacity…

RSMo § 484.010.2 (emphasis added). "[O]nce it has been determined that a particular document is legal in nature, the act of charging a fee for the preparation or completion of that document constitutes unauthorized law business, even when a non-lawyer does not exercise any legal judgment in completing the form." *Lucas Subway MidMo, Inc. v. Mandatory Poster Agency*, *Inc.*, 524 S.W.3d 116, 123 (Mo.App. W.D. 2017) (internal citations omitted). The Missouri Supreme Court has conclusively established that warranty deeds, promissory notes, and deeds of trust are legal in nature. *First Escrow*, 840 S.W.2d at 840.

Sections 484.010 and 484.020 "prohibit[] an entity and its non-lawyer agents, servants, employees and trust associates from: (1) drawing, preparing, or assisting in the preparation of [legal documents]; (2) for valuable consideration, for Missouri residents without the direct supervision of an independent licensed attorney selected by and representing those individuals." *Binkley v. American Equity Mortgage, Inc.*, 447 S.W.3d 194, 197 (Mo. banc 2014) (brackets and emphasis in original). Under the MMPA, if the plaintiffs "were not charged a fee for preparation of legal documents," "they fail[] to demonstrate they suffered an ascertainable loss of money or property as a result of an unfair practice." *Id.* at 199. The doctrine of money had and received, like unjust enrichment, requires proof of money paid to or a benefit conferred on a defendant where its retention would be unjust, *Dickey v. Royal Banks of Missouri*, 111 F.3d 580, 583-584 (8th Cir.

1997), and where a defendant "did not charge for preparation of legal documents," those claims too must fail, *Binkley*, 447 S.W.3d at 199.

The documents presented to the Court show that Plaintiffs were charged "Closing Costs" of "350.00" and a "Doc Process Fee" of ".00." These documents do not identify that a "document preparation fee" was charged. According to the documents, purchasers pay $350 to RTA but there is no evidence that the fee was for document preparation, legal documents, or a legal fee.

Plaintiffs argue these fees are essentially a scheme to place the administrative costs related to preparing and completing legal documents onto the consumers. However, Plaintiffs have submitted no evidence to support their theory that the fee was for completion of legal documentation. Defendants state the $350 fee was for escrow services, the closing process, title work, the issuance of the title insurance policy, and recording costs. The documents themselves reflect no fee was charged for document preparation.

While Plaintiffs believe the fees were a "scheme" to place costs on them for preparing legal documents there is simply no evidence to support this claim. The Court finds the fees are clearly identified as closing costs and that the document processing fee is identified as zero. The Court finds summary judgment in favor of Defendants on this claim is supported by the record.

Further, because the Court finds the fees are clearly identified as closing costs and that the document processing fee is identified as zero Plaintiffs remaining claims for violation of the MMPA and money had and received based on this theory also fail. See *Binkley v. American Equity Mortgage, Inc.*, 447 S.W.3d 194 (Mo. banc 2014). For the reasons set forth herein, the Court grants summary judgment in favor of Defendants on Plaintiffs' class claims.

**Statute of Limitations**

In addition to the reasons stated above, Defendants also argue Plaintiffs' class claims are barred by the applicable statute of limitations. Class Count I asserts a violation of Section 484.020 RSMo., which has a two-year statute of limitations. See Mo. Rev. Stat. § 484.020.2. Plaintiffs purchased their timeshare on March 29, 2014. Defendants argue Plaintiffs did not file their petition alleging unlawful collection of a fee until July 18, 2019.

Class Counts II and III are based on the $350 closing costs paid to RTA. Class Count II asserts a violation of the MMPA which has a five-year statute of limitations. See Mo. Rev. Stat. § 516.120(2). Class Count III asserts a claim for money had and received which also has a five-year statute of limitations. See Mo. Rev. Stat. § 516.120(1); and *Carpenter v. Countrywide Home Loans, Inc*., 250 S.W.3d 697, 703 n.5 (Mo. banc 2008).

Defendants argue Plaintiffs' initial Petition, filed on September 21, 2018, was limited to alleging that BVU made fraudulent misrepresentations during the timeshare sales presentation. On July 18, 2019, Plaintiffs filed a First Amended Petition that asserted claims against BVU alleging that the $350 was an unlawful document fee. On July 6, 2022, Plaintiffs filed a Third Amended Petition adding RTA as a defendant.

Plaintiff purchased their timeshare on March 29, 2014. Defendants contend the initial Petition only alleged sales misrepresentations as the purported wrongful conduct, making no mention of the $350 fee. Here, the Court finds even if Plaintiffs' claim survived summary judgment on the basis argued above, which the Court has found in favor of Defendants, Plaintiffs claims would also be barred by the applicable statute of limitations as argued by Defendants.

**Individual Claims**

Plaintiffs' class claims for unauthorized practice of law, violation of the MMPA, and money had and received are also brought by Plaintiffs as individual claims. The same analysis

10

and decision applies to Plaintiffs' individual claims that were also brought on behalf of the class. For the reasons discussed herein, the Court finds in favor of Defendants on these individual claims.

With regard to Plaintiffs' additional individual claims, Plaintiffs allege BVU sales staff made false representation to Plaintiffs which amounted to deception, fraud, false pretenses, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of a material fact, including, but not limited to: that VOIs are deeded real estate; that VOIs increase in value; that they could rent their timeshare for a profit and to cover maintenance fees; maintenance fees would never increase; the presentation would be 90 minutes; that they could travel anywhere in the world; and that it would be easy to make a reservation. Plaintiffs claim the misrepresentations violated the MMPA.

Defendants state Plaintiffs' claims fail based on the disclaimers, agreements and documents acknowledged and executed by Plaintiffs. Defendants cite to the contracts signed by Plaintiffs that contain disclaimers and waivers. Defendants argue Plaintiffs' signatures confirm they did not rely on any alleged statements beyond what is provided in the written documents.

To prove an MMPA claim under Mo. Rev. Stat. § 407.025.01, Plaintiffs must show that they (1) purchased merchandise (2) for personal, family or household purposes; and (3) suffered an ascertainable loss of money or property; (4) as a result of an act declared unlawful under the MMPA. *Goldsmith v. Lee Enterprises, Inc.*, 57 F.4th 608, 615 (8th Cir. 2023) (internal citation omitted). "The ascertainable loss element incorporates Missouri's "benefit of the bargain" common law fraud remedy." *Id.* The benefit of the bargain is "the difference between the value of the product as represented and the actual value of the product as received." *Id.*, citing *Thompson v. Allergan USA, Inc.*, 993 F. Supp. 2d 1007, 1012 (E.D. Mo. 2014).

"The MMPA makes unlawful the act, use or employment of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression or omission of any material fact in connection with the sale or advertisement of any merchandise." *Jackson v. Hazelrigg Auto. Serv.*, 417 S.W.3d 886, 894 (Mo. Ct. App. 2014). "When there is no evidence of a course of conduct…that would amount to fraud or deception, MMPA complaints can be dismissed." *Schulte v. Conopco, Inc*., 997 F.3d 823, 826 (8th Cir. 2021).

Plaintiffs allege the high-pressure sales tactics and the insistence that the purchase needed to be made immediately to receive the "benefits" prevented Plaintiffs from independently researching the claims made by Defendants and as a direct and proximate result of the misrepresentations, statements, assurances, and omissions made by Defendants, Plaintiffs Laskey have suffered an ascertainable monetary loss.

First, Defendants argue there is no evidence of an ascertainable loss. Defendants rely on *Toben v. Bridgestone Retail Operations*, LLC, 751 F.3d 888, 890, 896-97 (8th Cir. 2014), in support of their motion. In *Toben*, the Eighth Circuit affirmed summary judgment for a defendant on an MMPA claim where the plaintiff alleged that a car service and tire seller "disguised [a] 'shop supply' fee as a legitimate charge for providing supplies to its customers when in fact the fee is the defendant's profit." The Eighth Circuit affirmed the District Court's ruling that "defendant's in-store signs and print advertising explain [] the fee is not calculated based on the precise supplies in servicing each car" and "explain the formula used to calculate the fee, and explicitly state that the fee is represents costs and profits." *Id*. at 897. The Eighth Circuit held that such a fee "is not an unfair or deceptive practice under the MMPA." *Id*.

Further, Defendants argue Plaintiffs have not quantified any difference in the value of the product as represented and the actual value of the product as received. The disclosures executed

12

by Plaintiffs, and the written contracts, address the representations made and that Plaintiffs specifically disclaimed reliance on any oral representations. The Owner Confirmation Interview also gave Plaintiffs the opportunity to identify any oral representations on which they relied and they identified "None." Here, Plaintiffs have not established a difference between the value of the product with the alleged misrepresentations and the "actual value" of what they purchased. Plaintiffs have not presented evidence on any such difference. Nonetheless, Plaintiffs signed numerous documents that specifically disclaimed their reliance on any alleged false representations.

Plaintiffs allege they relied on representations which amounted to deception, fraud, false pretenses, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of a material fact. Plaintiffs cite to examples of representations made by Defendants that VOIs are deeded real estate; that VOIs increase in value; that they could rent their timeshare for a profit and to cover maintenance fees; maintenance fees would never increase; the presentation would be 90 minutes; that they could travel anywhere in the world; and that it would be easy to make a reservation. However, the record clearly establishes that Plaintiffs acknowledged by signing numerous documents that they had not relied on any "representations" that were outside the scope of the documents they signed.[1] Plaintiffs' arguments that they did not "fully read" the documents they executed does not relieve them of the representations and agreements contained therein.

---

[1] When Missouri courts interpret contracts, "so far as possible, [t]he intention of the parties is to be gleaned from the four corners of the contract." *Jerseyville Mall, LLC v. Shop 'N Save Warehouse Foods, Inc*. 633 S.W.3d 523, 526 (Mo. Ct. App. 2021) (brackets in original). "Missouri courts construe a contract as a whole so as not to render any terms meaningless," and a "construction that gives a reasonable meaning to each term and harmonizes all provisions is preferred over a construction that renders some provisions without function or sense." *Id*. "If the language is clear and addresses the disputed matter, the inquiry ends." *Id*.

Plaintiffs rely on *Kerr v. Vatterott Educ. Centers, Inc*., 439 S.W.3d 802 (Mo. Ct. App. 2014) arguing that for a claim under the MMPA the rule that all prior and contemporaneous oral agreements and representations are merged into the written contract does not apply. The Court finds the facts set forth in *Kerr* are distinguishable. Here, the Court finds that Plaintiffs failure to read to or understand the contract is not a defense. Further, Plaintiffs specifically answered "none" when asked what representations they relied upon in entering the agreements. The agreements clearly set fort the terms of Plaintiffs' purchase. Here, the Court finds Plaintiffs have failed to state a claim under the MMPA.

**Recission**

Plaintiffs also allege they are entitled to rescind the timeshare contracts, minus amounts paid in document fees. Under Missouri law, the elements of an action for fraudulent misrepresentation are: "(1) a false, material misrepresentation; (2) the speaker's knowledge of its falsity or his ignorance of its truth; (3) the speaker's intent that it should be acted upon by the hearer in the manner reasonably contemplated; (4) the hearer's ignorance of the falsity of the statement; (5) the hearer's reliance on its truth, and the right to rely thereon; and (6) proximate injury." *Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc*., 406 F.3d 1052, 1064 (8th Cir. 2005). Failure to establish any one of the elements is fatal to a claim for fraud. *Id.* "When fraudulent misrepresentations are alleged, a party may either seek to affirm the contract and sue for damages or sue for rescission." *Evergreen Nat. Corp. v. Carr*, 129 S.W.3d 492, 496 (Mo. Ct. App. 2004).

"To justify the extraordinary relief of rescission or cancellation, the party seeking such relief should present clear, cogent, and convincing evidence that it is warranted." *Signature Pool & Ct., a Div. of Classic Pools, Inc. v. City of Manchester*, 743 S.W.2d 538, 541 (Mo. Ct. App.

14

1987). "For evidence to be clear, cogent, and convincing, it must instantly tilt the scales in the affirmative when weighed against the evidence in opposition and the fact finder's mind left with an abiding conviction that the evidence is true." *Jones v. Tchrs. Ins. & Annuity Ass'n*, 934 S.W.2d 307, 311 (Mo. Ct. App. 1996).

Plaintiffs fail to present "clear, cogent, and convincing evidence" that the "extraordinary remedy" of rescission is warranted here. See *Signature Pool*, 743 S.W.2d at 541. Again, Plaintiffs executed contracts and agreements addressing the issues of what they relied upon. The Eighth Circuit has held that reliance on an alleged oral promise that plainly contradicts the express terms of a written contract does not constitute reasonable reliance. See *Martin v. Am. Family Mut. Ins. Co.*, 157 F.3d 580, 581–822 (8th Cir. 1998). Here, the Court finds in favor of Defendants on Plaintiffs' claim for recission.

## CONCLUSION

Wherefore, for the reasons set forth herein, the Court **GRANTS** Defendants' Motion for Summary Judgment. (Doc. 101). Plaintiffs' Motion for Partial Summary Judgment is **DENIED**. (Doc. 98). In addition, Court hereby **DENIES as moot** Plaintiffs' Motion to Certify Class. (Doc. 75).

**IT IS SO ORDERED.**

DATED: February 28, 2024

                                            */s/ Douglas Harpool*
                                            **DOUGLAS HARPOOL**
                                            **UNITED STATES DISTRICT JUDGE**